UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                    <u>For Online Publication Only</u>
-----------------------------------------------------------------X
MARGARET MARY PLATT,

                          Plaintiff,

                                        **MEMORANDUM AND ORDER**

        -against-                         14-CV-2012 (JMA)

CAROLYN W. COLVIN, *Acting Commissioner
of Social Security*,

                         Defendant.
-----------------------------------------------------------------X

**FILED
CLERK**

3/22/2016 12:06 pm

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**APPEARANCES:**

Charles E. Binder
Law Offices of Harry J. Binder and Charles E. Binder, P.C.
60 East 42nd Street
Suite 520
New York, NY 10165
*Attorney for Plaintiff*

Kenneth M. Abell, Assistant United States Attorney
Loretta E. Lynch, United States Attorney
Eastern District of New York
610 Federal Plaza
Central Islip, NY 11722
*Attorney for Defendant*

**AZRACK, United States District Judge:**

       Plaintiff Margaret Platt challenges the decision of the Acting Commissioner of Social

Security, who concluded, after a hearing before an Administrative Law Judge, that plaintiff is not

disabled for purposes of receiving disability insurance benefits under Title II of the Social

Security Act.  The case is before the Court on the parties' cross-motions for judgment on the

pleadings.  Because the Administrative Law Judge made a factual error and failed to fully

develop the record, the Court remands the case for further proceedings consistent with this

Memorandum and Order.

## I.    BACKGROUND

### A. Procedural History

Plaintiff filed an application for social security disability insurance benefits ("SSDI") under Title II of the Social Security Act (the "Act") on April 2, 2012, alleging disability since May 1, 2008.  (Administrative Transcript ("Tr.") 112–15, ECF No. 14.)  She alleged disability for several reasons, including pain in her back, hip, and leg.  Plaintiff's date last insured ("DLI") was December 31, 2008.  For a disabled individual to qualify for SSDI, she must also be "insured for disability insurance benefits," as defined by the Act.  See 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. §§ 404.101, 404.120.  Plaintiff does not dispute that her DLI is December 31, 2008.  This means that to qualify for SSDI, plaintiff must show that her disability began on or before December 31, 2008.

In September 2012, plaintiff's application was denied on initial review.  (Tr. 74–77.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  In July 2013, the ALJ held a hearing at which plaintiff appeared pro se and waived her right to counsel.  (Tr. 49–52.)  Only plaintiff testified at the hearing.  One week later, the ALJ denied plaintiff's SSDI claim, concluding that plaintiff was not under a disability within the meaning of the Act between the alleged onset date, May 1, 2008, through her DLI, December 31, 2008 (the "relevant period").  (Tr. 37.)  The Appeals Council denied plaintiff's request for review in January 2014.  This appeal followed.

### B. Factual Background

In light of the Court's decision to remand this case for further proceedings, the Court recounts only the medical evidence relevant to that determination.  Dr. Hamlin, an internist, treated plaintiff periodically since May 2005.  (Tr. 68, 257; Mem. Law Supp. Pl.'s Mot. J. Pleadings ("Pl.'s

Mem.") at 4, ECF No. 17.)  Unless otherwise noted, accounts of plaintiff's condition appeared in Dr. Hamlin's medical records.

In November 2008, plaintiff received x-rays of her lumbar spine, right hip, and pelvis after she complained of pain.  (Tr. 172–73.)  The x-ray of her hip and pelvis were unremarkable.  (Tr. 172.)  Her spine x-ray showed space narrowing at multiple levels of the lumbar spine but noted it was not significantly changed since her last x-ray in 2001.  (Tr. 173.)

In June 2012, plaintiff visited Dr. Hamlin for an evaluation.  (Tr. 263.)  Dr. Hamlin wrote that Dr. Jeffrey Kessler, a neurologist, was treating her with Lipitor and Cymbalta.  (Tr. 263.)  He described Dr. Kessler as her regular treating physician for her back pain.  (Tr. 263.)  Plaintiff had full range of motion in both arms and shoulder and full range of motion in lower extremities, and straight leg raises were painless to 45 degrees.  (Tr. 263.)

In August 2012, Dr. Hamlin completed a form for the Social Security Administration ("SSA").  (Tr. 255–62.)  Dr. Hamlin's cursory responses are difficult to read.  He notes that he began to treat plaintiff in May 2005 and last saw her in June 2012.  (Tr. 257.)  In his treating diagnosis, he mentioned lower back pain but otherwise simply referred to his notes from her June 2012 visit in response to the form's specific inquiries.  (Tr. 257–58.)  Dr. Hamlin declined to provide specific findings on plaintiff's ability to do any work-related activities, such as the ability to lift and carry, stand or walk, or sit.  (Tr. 260.)  Instead, Dr. Hamlin checked off that he could not provide a medical opinion regarding plaintiff's ability to do work-related activities.  (Tr. 260.)

In October 2012, Dr. Hamlin authored a letter with an additional evaluation of plaintiff's disability.  (Tr. 171.)  Dr. Hamlin reported that plaintiff was complaining of "intractable low back pain with pain radiating down her left leg and . . . pain down the right leg and periodic giving out of her right leg."  (Tr. 171.)  He wrote that her "back pain goes back several years," but "seems to

3

have escalated" as of his visit with her in November 2008. (Tr. 171.) He concluded that "[i]n view of her history of intractable pain and disability, I feel this patient is permanently disabled from her medical condition." (Tr. 171.) After the ALJ denied plaintiff's claim, an updated version of Dr. Hamlin's letter was submitted to the Appeals Council. (Tr. 166.) Dr. Hamlin's addendum provided that "Ms. Platt was unable to work in 2008 through the present date due to her back and leg disability." (Tr. 166.) Dr. Hamlin was the only physician to author a letter evaluating plaintiff's disability. Dr. Kessler, plaintiff's neurologist who began treating her after 2008, provided his medical records but no evaluation of her disability.

## C. The ALJ's Decision

The ALJ applied the five-step process required by the SSA's regulations, described below, and denied plaintiff's application for benefits, finding that plaintiff was not disabled within the meaning of the Act during the relevant period. (Tr. 31.) The ALJ found that plaintiff had severe impairments—degenerative disc disease, arthritis, and radiculopathy—but she retained the residual functional capacity ("RFC") to perform the full range of light work, as defined by the regulations. (Tr. 33–35.) Thus, at step four, the ALJ found that plaintiff was capable of performing her past relevant work as a housekeeper and bench assembler of small products. (Tr. 36–37.) As support for the determination, the ALJ cited plaintiff's "wide range of activities of daily living and the lack of organic medical evidence to support her allegations." (Tr. 35.) Addressing the medical opinion evidence, the ALJ wrote:

> Dr. Jeffrey Kessler describes the claimant as totally disabled.  However, Dr. Kessler began treating the claimant in 2010.  He does not date her disability as commencing prior to December 31, 2008.  Although Dr. Hamlin states he began treating the claimant in 2005, he does not offer an opinion on her ability to perform work related activities.

(Tr. 36 (citations omitted) (emphasis added).)  Based on plaintiff's testimony and the medical

evidence, the ALJ concluded that plaintiff had not been disabled during the relevant period.  (Tr. 37.)

# I.    DISCUSSION

## A. Standard of Review

A district court may set aside the Commissioner's determination that a plaintiff is not disabled "only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error."  Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (quoting Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)).  "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).  The district court does not determine de novo whether plaintiff is disabled.  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004).  Rather, to the extent any findings are supported by substantial evidence, they "shall be conclusive."  42 U.S.C. § 405(g); see also Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  However, when an ALJ overlooks an important piece of evidence, remand may be appropriate to ensure the ALJ considered such evidence.  See Carnevale v. Gardner, 393 F.2d 889, 890–91 (2d Cir. 1968); Hanes v. Comm'r of Soc. Sec., No. 11-CV-1991, 2012 WL 4060759, at *13 (E.D.N.Y. Sept. 14, 2012) (remanding

because the ALJ's factual inaccuracies "suggest[ed] a potential misunderstanding of the record").

**B. Legal Standards**

*1. Social Security Disability Standard*

Under the Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). For a person to be under a disability, the impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The SSA established a five-step sequential analysis by which an ALJ determines disability. 20 C.F.R. § 404.1520. The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (second alteration in original) (quoting Green–Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). The claimant bears the burden on the first four steps, but at step five, the Commissioner must demonstrate "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

*2. Duty to Develop the Record*

"[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history." Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999); see also Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009); 20 C.F.R. § 404.1512(d). Furthermore, when

a claimant for disability benefits appears pro se, the ALJ is under a heightened duty and must protect the claimant's rights "by ensuring that all of the relevant facts [are] sufficiently developed and considered." Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990) (alteration in original) (quoting Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980)). While the Secretary has no obligation to provide counsel, when a claimant properly waives the right to counsel and proceeds pro se at an administrative hearing, the court must "make a searching investigation of the record to make certain that the claimant's rights have been adequately protected." Moran, 569 F.3d at 113 (quoting Cruz, 912 F.2d at 11).

*3. Treating Physician Rule*

Under the "treating physician" rule, the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence. Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). If a treating physician's opinion is not given controlling weight, the ALJ must consider several factors and explain the weight given to that physician's opinion. Id.; 20 C.F.R. § 404.1527(c). Controlling weight will not apply to a medical source's opinion about issues reserved to the Commissioner. See 20 C.F.R. § 404.1527(d)(1), (d)(3); SSR 96-5P, 1996 WL 374183 (July 2, 1996). When a treating physician's clinical findings are inadequate, the ALJ has an affirmative duty to seek additional information. Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). "Before the ALJ can reject an opinion of a pro se claimant's treating physician because it is conclusory, basic principles of fairness require that he inform the claimant of his proposed action and give him an opportunity to obtain a more detailed statement." Hankerson, 636 F.2d at 896.

*4. Evaluation of Claimant's Credibility*

Although the ALJ must take into account the claimant's subjective complaints of pain and other limitations, the ALJ is not required to accept subjective complaints without question, but may instead exercise discretion in weighing the credibility of a claimant's testimony.  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010).  Under the regulations, the ALJ follows a two-step process to weigh the claimant's testimony: (1) the ALJ must decide whether the claimant suffers from a "medically determinable impairment that could reasonably be expected to produce [claimant's] symptoms"; and (2) if so, the ALJ must consider the extent to which such symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529(a); see also, Genier, 606 F.3d at 49.  The ALJ is required to consider several factors and provide specific reasons to support a determination on credibility.  SSR 96-7P, 1996 WL 374186 at *2 (July 2, 1996).

**C. Analysis**

*1. Duty to Develop the Record*

Here, remand is appropriate in light of the ALJ's factual error and resulting failure to fully develop the record for plaintiff, who was a pro se claimant.  In her decision, the ALJ misattributed Dr. Hamlin's statement in his October 2012 letter—that plaintiff was "permanently disabled"—to Dr. Kessler.  The ALJ then discounted this statement because Dr. Kessler began treating plaintiff in 2010, after the relevant period had ended.  Dr. Hamlin, however, did treat plaintiff during the relevant period.

Plaintiff argues that this factual error was clearly prejudicial because if the ALJ had properly attributed the statement to Dr. Hamlin, the statement may have been credited under the treating physician rule.  Plaintiff argues that, at the least, the ALJ should have further developed

the record regarding Dr. Hamlin's opinion and should have informed the pro se claimant of the importance of obtaining a medical opinion that addressed her functional status.  The Commissioner responds that the ALJ properly concluded, based on an adequately developed record, that plaintiff was not disabled.  Specifically, the Commissioner contends that Dr. Hamlin's statement would not have been given special significance under the regulations.  Furthermore, the Commissioner argues that even if the ALJ had recognized Dr. Hamlin as the statement's author, it would have been futile to re-contact him for additional information.

The Court agrees that this error was prejudicial to the pro se claimant, and the case should be remanded for further development of the record, where plaintiff will now be represented by counsel.  See Hanes v. Comm'r of Soc. Sec., No. 11-CV-1991, 2012 WL 4060759, at *1 (E.D.N.Y. Sept. 14, 2012) ("A conclusion by this Court that the factual error in this case was harmless would simply be speculation, and thus, remand is warranted to ensure that the ALJ fully considers this overlooked medical information in light of the entire record pursuant to the treating physician rule . . . .").  As the Commissioner notes, the ALJ's determination of plaintiff's RFC finds some support in the record, including plaintiff's testimony from the hearing about her daily activities and lifestyle.  However, because of the ALJ's mistaken belief that Dr. Kessler provided the October 2012 letter, the ALJ made no effort to investigate the basis for Dr. Hamlin's statements about plaintiff's disability.[1]  The Court is unable to determine that the ALJ's decision was not materially affected by the failure to investigate and elaborate upon Dr. Hamlin's opinion.  See Carnevale v. Gardner, 393 F.2d 889, 891 (2d Cir. 1968) (finding that remand was appropriate when the ALJ

---

[1] It is unclear whether the general lack of medical evidence in the record can be remedied by further inquiry.  For example, although Dr. Hamlin has been treating plaintiff since 2005, the parties discuss only two of his treatment records, one from 2008 and one from 2012.  Both parties contacted Dr. Hamlin regarding his treatment records, (Tr. 143−46), but it may be possible that, on remand, Dr. Hamlin could provide additional, relevant medical records.  See 20 C.F.R. § 404.1512(d) (stating that unless otherwise inapplicable, the Commissioner "will develop your complete medical history for at least the 12 months preceding the month in which you file your application").

ignored evidence "which might well have influenced his decision").

Furthermore, the ALJ failed to advise the pro se claimant that she should attempt to obtain a more detailed statement from Dr. Hamlin.  Presumably the ALJ failed to do so because she believed that Dr. Kessler authored the October 2012 letter.  Under the circumstances, this warrants remand.  See Hankerson v. Harris, 636 F.2d 894, 896 (2d Cir. 1980) ("The ALJ also erred in failing to advise plaintiff that he should obtain a more detailed statement from his treating physician. It is settled law in this circuit that in the absence of substantial contradictory evidence, the opinion of the claimant's treating physician is binding on the Secretary.").  The Commissioner is correct that the statements in Dr. Hamlin's October 2012 letter are not entitled to controlling weight because Dr. Hamlin opined on issues reserved to the Commissioner—namely whether plaintiff was disabled or unable to work.  See 20 C.F.R. § 404.1527(d)(1)  However, the Court disagrees that the ALJ was absolved from her heightened duty to the pro se claimant.  Dr. Hamlin appears to be the only treating physician who saw plaintiff during the relevant period.  Therefore, it was crucial to obtain as much information from him as possible.[2]

The Court also disagrees with the Commissioner that it would have been futile to re-contact Dr. Hamlin regarding his letter from October 2012.  Compare Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (noting that a doctor's failure to provide specific findings for the doctor's changed functional assessment of the plaintiff "does not mean that such support does not exist," but that the doctor may not have known that the ALJ would consider the information critical); with Harrison v. Colvin, No. 14-CV-604S, 2015 WL 5567534, at *4 (W.D.N.Y. Sept. 22,

---

[2] Plaintiff's testimony at the hearing suggests that she did not grasp the importance of Dr. Hamlin as her treating physician.  For example, the ALJ elicited the following testimony from plaintiff during the hearing:

Q: [A]nd who prescribed the cane?
A: Dr. Hamlin and Dr. Kessler said it would be better to use something instead of falling.
Q: Okay, but Dr. Kessler . . . you didn't see him until another year later, so it wasn't Kessler.
A: Oh, the time period, yeah. . . . I'm sorry, I can't keep it straight.

(Tr. 60.)

2015) (rejecting a doctor's "conclusory notation" regarding the plaintiff's disability because the plaintiff submitted a second questionnaire from the doctor, in which the doctor declined for the second time to answer specific questions about plaintiff's limitations).  Although Dr. Hamlin had previously stated he could not opine on plaintiff's abilities to perform work related activities during the relevant period, plaintiff should have been afforded the opportunity to request whether Dr. Hamlin could elaborate at all on his subsequent October 2012 opinion that plaintiff had a permanent disability.  The Commissioner's final argument—the ALJ noted that Dr. Hamlin's October 2012 letter did not explicitly indicate when plaintiff's disability began—does not excuse the ALJ's failure to further investigate the physician's statement, since Dr. Hamlin treated plaintiff during the relevant period.[3]  Thus, the Court will remand the case for further proceedings to address Dr. Hamlin's statements and develop the record accordingly.

*2. Credibility Determination*

As an additional ground for remand, plaintiff argues that the ALJ erred when the ALJ found that plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not credible.  The ALJ determined that there was "not enough objective medical evidence" to establish plaintiff's claims that her symptoms were disabling during the relevant period.  The ALJ also based the credibility determination on plaintiff's testimony about her "wide range of activities of daily living." (Tr. 35.)  Plaintiff argues that the ALJ's determination improperly relied on plaintiff's "conservative course of treatment" and plaintiff's insufficiently developed testimony.  (Pl.'s Mem. at 12.)

The Court agrees with the Commissioner that the ALJ appropriately considered plaintiff's testimony about her daily activities, her subjective reports of pain, and the medical evidence in the

---

[3]  Dr. Hamlin's addendum submitted to the Appeals Council clarified the onset date: "Ms. Platt was unable to work in 2008 through the present date due to her back and leg disability."  (Tr. 166.)

record.   The ALJ asked plaintiff about her daily life during the relevant period.  Plaintiff testified that during the relevant period she could drive.  She would visit her friend's widowed mother three days per week, three hours per day, to keep her company and would receive a small amount of money for doing so.  The ALJ asked, and acknowledged, that sometimes plaintiff cancelled these visits because of her pain.  Plaintiff could bathe, shower, and dress herself, but would need help tying her shoes because of difficulties with bending.  Plaintiff would go light food shopping and travel to the post office and the pharmacy.  Plaintiff did light cleaning, such as dusting or cleaning the sink, and she could cook.  She also went out to dinner with friends every other weekend and would have friends over to play cards.

The ALJ's credibility determination was also consistent with the available, objective medical record regarding the relevant period.  As discussed above, even when credited to the correct author, Dr. Hamlin's 2012 statements about plaintiff's disability were not entitled to controlling weight.  Consequently, they do not aid the evaluation of credibility.  See Torres v. Comm'r of Soc. Sec., No. 14-CV-6712, 2015 WL 7281640, at *7 (E.D.N.Y. Nov. 16, 2015) ("[The doctor's] opinion is on an issue reserved to the Commissioner and does not speak to the credibility of plaintiff's subjective complaints.").  And, contrary to plaintiff's argument, the credibility determination was not based on plaintiff's conservative course of treatment.  The ALJ noted only that surgery was not recommended. Instead, the ALJ accurately described that plaintiff's 2008 x-rays were either unremarkable or showed insignificant changes from plaintiff's x-rays in 2001, when plaintiff had still been working.  Also, plaintiff began to seek additional treatment and physical therapy after the relevant period had ended.

Of course, on remand, to the extent that the record is further developed, especially regarding Dr. Hamlin's opinion, the ALJ should consider whether to reassess the credibility

determination.  However, based on the current record, the ALJ properly considered multiple factors, and the credibility determination is supported by substantial evidence.

## II.    CONCLUSION

For the foregoing reasons, defendant's motion for judgment on the pleadings is DENIED, and plaintiff's motion for judgment on the pleadings is GRANTED.  The Court remands the case for further proceedings.  The ALJ must develop and address Dr. Hamlin's medical opinion.  To the extent necessary, the ALJ must explain the weight given to Dr. Hamlin's opinion, in compliance with the treating physician rule.  The Clerk is directed to enter judgment accordingly.


**SO ORDERED.**


Dated:  March 22, 2016
Central Islip, New York

_____ /s/     (JMA)_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE